FILED
UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

2011 MAR 17 A 11: 53

CLERK'S OFFICE
AT BALTIMORE

CAROLYN FLORES
    Plaintiff

v.

THE LIFE INSURANCE COMPANY
OF NORTH AMERICA, et al.
    Defendant

CIVIL NO. L-10-0098

\*\*\*\*\*\*\*

## MEMORANDUM

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. The pending motions require the Court to decide whether Carolyn Flores, an ERISA claimant, is entitled to statutory penalties and attorney's fees. Flores is not entitled to statutory penalties because (i) defendant LINA is not a plan administrator, and (ii) LINA was not required to furnish the documents that Flores faults the insurer for withholding. Flores is entitled to a partial award of attorney's fees, however, because this suit was the catalyst that prompted LINA to reconsider Flores's claim for short term disability benefits ("STD").

In July 2007, Flores, proceeding pro se, applied for STD from an employee benefits plan sponsored and administered by her employer, Bechtel Corporation ("Bechtel"). Defendant Life Insurance Company of America ("LINA") was the plan's insurer.[1] LINA reviewed Flores's claim and found that she was entitled to STD for a three week period. It did not pay further benefits, however, because it concluded that Flores did not have a continuing disability. Flores took an administrative appeal from this decision but did not prevail. In May 2008, she returned to work on a part-time basis.

---

[1] LINA operates as part of CIGNA Corporation.

In September 2008, Mr. Scott Elkind, an experienced employee benefits attorney, began representing Flores. Elkind maintained that Flores was still disabled and that LINA had erred in denying her claim for continuing STD. Although LINA reopened Flores's claim and considered additional material Elkind submitted, it concluded that Flores was not entitled to further STD.

Flores filed the instant suit in January 2010. In August of that year, the parties informed the Court that LINA had agreed to pay Flores a full STD award and a partial long term disability benefits ("LTD") award, and that Flores had agreed to voluntarily dismiss her Complaint.

Although the merits of the dispute have been resolved, two motions filed by Flores must be decided. The first is a Motion for Penalties pursuant to 29 U.S.C. § 1132(c), and the second is a Motion for Attorney's fees pursuant to 29 U.S.C. § 1132(g). The parties have extensively briefed the Motions, and the Court held a hearing on November 22, 2010. Having carefully reviewed the papers, the Court will, by separate Order of even date, DENY Flores's Motion for Penalties (Docket No. 31), and GRANT IN PART and DENY IN PART her Motion for Fees (Docket No. 46).

## I. Background

The facts of this case are fully set forth in the parties' briefs and need not be restated herein. The essential facts are as follows.

Proceeding pro se, Flores applied for STD on July 5, 2007. LINA reviewed her claim and paid benefits for the period beginning July 7, 2007 and ending July 27, 2007. LINA did not pay further benefits because it concluded that Flores did not have a continuing disability. Flores appealed this ruling on February 7, 2008, and LINA denied her appeal on April 7, 2008. Flores returned to work on a part-time basis in May 2008.

Elkind began representing Flores in September 2008. On September 25, he requested that LINA produce certain documents related to Flores's claim. Among other things, Elkind requested "copi[es] of all internal claim procedures, training instructions, protocols, other instructional or guiding materials or internal memorand[a] . . . used, or referred to during the course of the review" of employee benefit claims. Docket No. 50, Ex. 4. The request specifically referenced the claim and policy numbers for Flores's claim for STD.

LINA produced several documents in response to Elkind's request. LINA stated that it would not produce its internal manuals, however, because they were "proprietary copyrighted material." Docket No. 44, Ex. 12. Flores then sent a second letter in which she stated that LINA had failed to meet its production obligations and reiterated her request for the internal manuals. LINA then sent additional materials but not manuals to Flores and afforded her the opportunity to renew her appeal of its decision to deny her claim for STD.

Flores filed her renewed appeal by letter dated December 26, 2008. Flores contends that, at this point in the administrative process, she had also become eligible for LTD. In the letter's opening, Flores writes that she is submitting "additional medical, functional capacity, and vocational documentation in support of the <u>long term disability</u> claim" (emphasis added). Docket No. 44, Ex. 16. Therefore, Flores argues that the material she submitted was not only an appeal of her STD claim but also a new claim for LTD. It is undisputed, however, that Flores had not yet filed a formal claim for LTD. Further, the letter specifically referenced the claim and policy numbers for Flores's claim for STD.

LINA rejected Flores's renewed appeal on January 8, 2009, stating that the supplemental information she provided was "not relevant." Flores then filed her renewed appeal a second time. LINA accepted the renewed appeal and referred Flores's case for a new medical review.

LINA continued to view Flores's claim as for STD only and, on March 5, 2009, it denied her claim yet again.

Flores filed the instant suit on January 14, 2010. Although the caption of Flores's Complaint named both the short-term and long-term Becthel plans as defendants, the Complaint did not specify whether Flores was seeking STD, LTD, or both. Further, it is undisputed that Flores did not file a formal administrative claim for LTD until May 7, 2010.

After Flores filed her administrative claim for LTD, LINA filed a Motion to Dismiss the instant suit, contending that Flores had failed to exhaust her LTD claim. Flores opposed the motion and moved for statutory penalties. She argued that by failing to disclose the "STD to LTD Transition" portion of its claim manual (the "Transition Manual"), LINA had failed to meet its disclosure obligations under ERISA.

The Transition Manual provides guidelines to claims managers on how to transition a claim for STD to a claim for LTD. It states, in pertinent part, that "[a] claim should be escalated to . . . LTD . . . when it becomes clear that a return to work may not or will not occur prior to the STD Termination Date." Docket No. 44, Ex. 1. Notably, the manual does not state that every STD claim must be referred for LTD review; nor does it state that LINA is obligated to inform all STD claimants that they may also be eligible for STD.

On July 23, 2010, LINA agreed to pay Flores a full STD award and LTD "for the period of December 27, 2007 through September 16, 2008." Docket No. 44, Ex. 18. The parties then jointly informed the Court that although they had resolved the merits of the dispute, Flores would nevertheless pursue her Motion for Penalties and also file a Motion for Attorney's Fees. The Court will address each of the Motions in turn.

## II.     Motion for Penalties

According to Flores, she is entitled to the maximum statutory penalty because LINA deliberately withheld the Transition Manual. In response, LINA offers several reasons why it was not required to produce the manual. Before turning to the merits of the parties' positions, the Court must determine whether a penalty can be assessed against LINA, which was the plan's insurer.

### A.     Can Penalties Be Assessed Against LINA?

Under the plain language of ERISA, civil penalties can only be imposed upon the plan administrator. See 29 U.S.C. § 1132(c)(1). ERISA defines the administrator as "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16)(A).

It is undisputed that Bechtel was the designated plan administrator in this case. See Docket No. 44, Ex. 19 (naming Bechtel as the plan administrator and plan sponsor). Flores nevertheless argues that penalties can be assessed against LINA because it acted as a "de facto" plan administrator. The basis for this theory is Flores's contention, which LINA does not dispute, that LINA not only underwrote the plan but also reviewed claims for benefits.

The Fourth Circuit has not yet endorsed the "de facto" administrator doctrine, although some other Circuits have done so. See, e.g., Rosen v. TRW, Inc., 979 F.2d 191, 193-94 (11th Cir. 1992); Law v. Ernst & Young, 956 F.2d 364, 373-74 (1st Cir. 1992). Rather, the law in the Fourth Circuit is that a court cannot impose penalties on an insurer unless the insurer falls within ERISA's definition of a plan administrator. Coleman v. Nationwide Life Ins. Co., 969 F.2d 54,

5

62 (4th Cir. 1992). The Fourth Circuit has explained that an insurer does not become a plan administrator simply because it "has administrative responsibilities with respect to the review of claims under the policy." Id.

The case of Sentara Virginia Beach General Hosp. v. LeBeau, 182 F. Supp. 2d 518 (E.D. Va. 2002), is instructive on this point. There, an insurer moved to dismiss the plaintiff's claim for penalties, contending that it was not the plan administrator. Id. at 526. Although the court denied the insurer's motion, it also declined to apply the "de facto" administrator doctrine. Thus, the court permitted discovery on the limited issue of whether the insurer had been "designated as the administrator 'by the terms of the instrument under which the plan operated.'" Id. (quoting 29 U.S.C. § 1132(c)(2)).

In the absence of authority compelling it to do so, this Court declines to adopt the "de facto" administrator doctrine. As mentioned above, Bechtel, not LINA, is the designated plan administrator. Only Bechtel, therefore, could be subject to a penalty for the alleged disclosure violations. Nevertheless, the Court will assume arguendo that a penalty could be assessed against LINA. Accordingly, the next issue is whether a penalty is warranted under the facts of this case.

### B. Is a Penalty Warranted?

Flores requested the documents at issue so that she could prepare her renewed appeal. 29 C.F.R. § 2560.503-1(h) addresses the procedures a plan must follow when a claimant appeals an adverse determination. Upon request, the plan administrator must provide the claimant with copies of "all documents, records, and other information relevant to the claimant's claim for benefits." § 2560.503-1(h)(2)(iii) (emphasis added). Material is relevant if it

(i) Was relied upon in making the benefit determination;

(ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

(iii) Demonstrates compliance with administrative processes and safeguards required pursuant to [the regulation] in making the benefits determination . . .; or

(iv) In the case of . . . a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied . . . benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

§ 2560.503-1(m)(8).

LINA's Transition Manual states, in pertinent part, that "[a] claim should be escalated to the LTD Case Manager when it becomes clear that a return to work may not or will not occur prior to the STD Termination Date." Docket No. 44, Ex. 1. Flores contends that, under the terms of the manual, LINA was required to refer her claim for LTD because she did not return to work until after her STD benefits terminated.[2] Therefore, although it is undisputed that LINA did not rely on the Transition Manual while resolving Flores's claim, she argues that the manual was relevant insofar as it "constitutes a statement of policy or guidance" with respect to the administration of STD and LTD benefits. § 2560.503-1(m)(8)(iv).

LINA contends that the Transition Manual is inapplicable to Flores's claim. According to LINA, the manual is relevant only to cases in which the claimant has received STD for the maximum amount of time allowable under the plan. Two parts of the manual support this interpretation. The first is a sample "STD to LTD Escalation Letter," which informs the sample claimant that her STD claim will be transitioned to LTD because she has exceeded "the maximum period of time that STD benefits are payable under your policy/contract." Docket No.

---

[2] Flores's disability benefits terminated in July 2007. LINA denied Flores's claim for continuing benefits in November 2007 and her appeal of that decision in April 2008. She returned to work on a part-time basis in May 2008.

7

44, Ex. 1. The second is the referral protocol, which instructs the claim manager for the STD claim to "set repetitive pay until the end of the claim, or as far ahead as possible and diary to update." Id.

Ultimately, LINA has the better argument. The connection between the Transition Manual and Flores's claim is tenuous at best. Flores received STD for a limited period of time. In LINA's eyes, even though Flores did not return to work until May 2008, Flores's claim for STD had not expired and, therefore, it need not have been referred for LTD. Accordingly, the Court concludes that LINA was not required to produce the manual.

Even if LINA was obligated to produce the manual, the penalty analysis favors the Defendant. In determining whether to impose a penalty, the Court must consider several factors including (i) "prejudice to the plaintiff"; (ii) "the nature of the administrator's conduct in responding to the participant's request for plan documents"; and (iii) "frustration, trouble, and expense" incurred by the plaintiff. Davis v. Featherstone, 97 F.3d 734, 738-39 (4th Cir. 1996).

In this case, there is no evidence that LINA acted in bad faith by failing to produce the Transition Manual. As mentioned above, LINA denied continuing STD because it concluded that Flores did not have a continuing disability. The manual is silent on this issue. Although Flores had not yet returned to work when she requested the manual, she also had not exhausted her STD benefits. LINA, therefore, reasonably concluded that she was not eligible for LTD and, therefore, that the manual was irrelevant to her appeal.

Further, Flores suffered no prejudice from Bechtel's failure to disclose the Transition Manual. In response to Flores's first request for documents, LINA produced a copy of the summary plan description ("SPD"). The SPD, in pertinent part, provides:

> If you filed and are receiving STD, you will automatically receive an LTD claim
> form and filing information when you enter your fourth month of disability. If

> you do not receive this information or you did not file and receive STD, you will
> need to contact the Bechtel employee Service Center . . . .

Docket No. 44, Ex. 19. Thus, Flores was on notice that she had to contact LINA if she wanted to pursue a claim for LTD. By contrast, the Transition Manual, which sets forth LINA's internal policies, provides no information that would have assisted Flores in either preparing her appeal or filing a claim for LTD. Accordingly, Flores suffered no prejudice, and her Motion for Penalties will be denied.

## III. Motion for Attorney's Fees

Flores also seeks to recover the attorney's fees she incurred in bringing this action. LINA argues that Flores is not entitled to an award of attorney's fees because any success she achieved in this case occurred in the administrative context. LINA also argues that, even if Flores did achieve the requisite degree of success, the circumstances of this case do not justify an award.

### A. Whether Flores Achieved "Some Degree of Success on the Merits"

Pursuant to 29 U.S.C. § 1132(g)(1), the Court in its discretion may award attorney's fees to a party in an ERISA action who achieves "some degree of success on the merits." Williams v. Metro. Life Ins. Co., 609 F.3d 622, 634 (4th Cir. 2010) (quoting Hardt v. Reliance Std. Life Ins. Co., 130 S.Ct. 2149, 2158 (2010)). LINA argues that Flores is not entitled to an award of fees because she obtained all of her relief through the administrative process. See Rego v. Westvaco Corp., 319 F.3d 140, 150 (4th Cir. 2003) (holding that ERISA attorney's fees are "categorically unavailable for expenses incurred while exhausting administrative remedies"). Although Flores has not requested any attorney's fees for work done in the administrative process, LINA argues that an award of fees would be improper because Flores never achieved any success in the instant suit.

As mentioned above, an ERISA claimant need not fully litigate her claims to receive an award of attorney's fees. See, e.g., Hackett v. Standard Ins. Co., No. CIV. 06-5040-JLV, 2010 WL 5068098, *3-4 (D.S.D. Dec. 7, 2010) (citing Hardt v. Reliance Standard Life Insurance Co., 130 S.Ct. 2149, 2152 (2010)). In Hackett, the claimant and the defendant stipulated to the payment of benefits and left the issue of attorney's fees and costs to the court. Ultimately, the court concluded that an award of fees was proper, reasoning that Hackett had achieved a settlement that amounted to a "complete victory-the very prayer for relief which she sought by her original complaint." Id. (quoting Hardt, 130 S. Ct. at 2159).

Flores has achieved a similar degree of success because LINA awarded her full STD and partial LTD. Although Flores technically prevailed in the administrative arena, this litigation was the catalyst for LINA's decision to award her benefits. LINA admits that it did not invite Flores to file a claim for LTD until after she filed suit. Under these circumstances, Flores, like the claimants in Hardt and Hackett, achieved the very prayer for relief which she sought by her original complaint, and an award of fees may be proper.

### B.  Whether the Factors Weigh in Favor of an Award

In deciding whether to make an award of attorney's fees, the Court must consider five factors: (1) any bad faith by the opposing party, (2) the ability of the opposing party to satisfy an award of attorney's fees, (3) whether an award of attorney's fees would deter other persons acting under similar circumstances, (4) whether the requesting party sought to benefit all participants in a plan or to resolve a significant question of law regarding ERISA itself, and (5) the relative merits of the parties' positions. Williams, 609 F.3d at 635 (citing Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1029 (4th Cir. 1993) (en banc)). Although none of these factors is decisive, "they constitute the nucleus of the inquiry." Cox v. Reliance Standard Life

Ins. Co., 179 F. Supp. 2d 630, 633 (E.D. Va. 2001) (citing Custer v. Pan American Life Ins. Co., 12 F.3d 410, 422 (4th Cir.1993)).

The Court notes that Flores's counsel devoted the majority of his argument on these points to whether LINA acted in bad faith by withholding its claim manual. Given the Court's conclusion that LINA was not obligated to disclose the manual, this argument carries little weight.

Nevertheless, an award of attorney's fees is proper. In short, this suit prompted LINA to reconsider an earlier denial that must be considered erroneous. Thus, the suit was the catalyst in securing benefits for Flores and in correcting LINA's original error. Further, Elkind managed to achieve a complete victory for Flores without having to litigate the case to the end. Under these circumstances, an award of attorney's fees is proper.

### C.     Calculating the Award

In concluding that Flores is entitled to attorney's fees, the court must first decide the reasonable hourly rate that should be applied. 29 U.S.C. § 1132(g)(1); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("It remains for the district court to determine what fee is 'reasonable.'"). Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. See Blum v. Stenson, 465 U.S. 886, 895 (1984). This determination is made by assessing the attorney's experience and skill, and comparing his rate to the rates charged by lawyers of reasonably comparable skill, experience, and reputation. Id. at 895 n. 11.

Although Elkind has requested an hourly rate of $450, the Court will award him fees at the rate of $300 per hour. Several facts support an award at this rate. First, on his web site, Elkind does not state that his hourly rate is a fixed $450 for all cases. Rather, his firm states that

it offers flexible payment arrangements, which include flat fees, contingency fees, and hourly fees, or a combination thereof, "in order to make our services affordable to our clients."[3]

Second, $450 is a rate at the higher end of the scale. It is a reasonable charge for sophisticated legal work where there is a substantial sum at issue. Here, there was not a great sum in question. LINA awarded Flores $49,783.40 for her STD claim and $9,721.52 for her LTD claim. Docket No. 62. This does not denigrate the value of Elkind's work, but the fee must be proportional to the type of litigation and the amount at stake.

Additionally, the case never advanced to the stage where Elkind's expertise would have been brought to bear. As mentioned above, LINA agreed to pay benefits at an early stage of the litigation. Elkind's non-administrative work up to that time included filing the complaint, requesting information, and opposing LINA's Motion to Dismiss. Elkind was not required to hire expert witnesses, undertake a sophisticated medical analysis, or exhaustively review the administrative record.

Finally, Elkind's briefing focused primarily on his claim for penalties and the de facto administrator doctrine, both of which the Court rejected. Many of Elkind's papers contain boilerplate language and quotations from statutes or cases that are pertinent to his firm's specialty but of marginal relevance to the pending motions.[4]

In determining that $300 is a reasonable hourly rate, the Court does not seek to denigrate the reputation of Elkind or his firm. To the contrary, Elkind's expertise in this complex area of

---

[3] Answer to Frequently Asked Questions-What type of fees does our firm charge?, Elkind & Shea (last visited March 4, 2011 5:25 PM), http://www.disabilitybenefitslawfirm.com/FAQ_Disability.html#M.

[4] See, e.g., Docket No. 31 at 6-7 (discussing legislative history behind ERISA disclosure guidelines); Docket No. 52 at 6-8 (discussing excusal of exhaustion requirement, "own occupation standard," and remedy for inaction on a claim); Docket No. 59, Ex. 4 (listing cases which hold that defendant has no right to confidentiality in discovery); id., Ex. 5 (listing cases requiring insurers to produce claims manuals in civil litigation).

the law made him an especially effective advocate for his client. Nevertheless, the Court must exercise reason and practicality in awarding attorney's fees.[5] Moreover, the Court recognizes that the rate must be substantial enough to motivate qualified counsel to take cases in which the total value of the litigation is relatively small. Otherwise, clients, most of whom are not wealthy, would not be able to obtain counsel.

Elkind has submitted a statement that he has expended 89.9 hours on this case. Approximately 31.7 hours of these were expended on Flores's motion for penalties. Because this attorney-created issue bore no fruit, the Court will deduct this time from the award. Thus, Flores is entitled to an award of $17,925, which includes paralegal time and costs.

## III. Conclusion

For the reasons stated above, the Court will, by separate Order of even date, DENY Flores's Motion for Penalties (Docket No. 31), GRANT her Motion for Fees (Docket No. 46) IN PART, DENY her Motion for Fees IN PART, and DIRECT the Clerk to CLOSE the case.

Dated this 16TH of March, 2011

Benson Everett Legg
United States District Judge

---

[5] The Court notes that attorneys in this district who accept appointments under the Criminal Justice Act are paid $125 per hour to handle complex criminal cases. This rate is substantially less than the rate Elkind has requested. Cf. Local Rule 104.11.b (D. Md. 2010) (limiting fees charged by treating physicians to $325 per hour).

13